THE NATIONAL BANK OF GLOVERSVILLE, RESPONDENT, *v.* JOHN E. WELLS, WILLARD D. BURR AND REMUS D. BURR, APPELLANTS.

*National bank — indorsements of notes for commissions — title of, to such paper taken by it.*

The plaintiff, a national bank, agreed with one Burr to procure to be discounted for him a note, indorsed for Burr's accommodation by the defendant Wells, on plaintiffs receiving a commission of five per cent. for so doing. The plaintiff indorsed the note, and sent it to a national bank in Albany, by which it was discounted. The note, not being paid, was protested, and notice sent to plaintiff, which subsequently took it up. Upon the trial of this action, brought to recover the amount of the note, it was insisted that the transaction was usurious; that the plaintiff had no title to the note, for the reason that it had no power to agree to sell its indorsement and procure notes to be discounted, upon payment of a commission; and that the taking up of the note by it, was a purchase of it, which by its charter it had no right to make.

*Held*, that the transaction, as a matter of fact, was not usurious; that the plaintiff's title did not depend upon the alleged unlawful agreement to loan its credit and procure the discount; that it got title through the Albany bank, a *bona fide* holder for value; and that it must, therefore, be held to be the lawful owner of the note, and entitled to enforce it. (TAPPAN, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought upon a promissory note, in the amount of $2,400, made by the defendants Burr to the order of and indorsed by the defendant Wells, the latter being an accommodation indorser. The referee before whom the action was tried found, among other things:

That on or about the 9th day of August, 1875, the defendants Burr made their certain promissory note, described in the complaint, and upon which this action is brought, whereby they promised to pay, in two months from the date thereof, to the order of the defendant, John E. Wells, at the Metropolitan National Bank, New York, the sum of $2,400, which note was indorsed by the defendant, John E. Wells, for the accommodation of the makers. That said note, so indorsed, was, on or about the 11th day of August, 1875, delivered by the defendants Burr to the plaintiff's cashier, for the purpose of having it discounted and raising money thereon with which to pay a note of $1,995.45 (indorsed by defendant Wells, and then indorsed by plaintiff, and by it caused to be discounted by The Dry Goods Bank of New York, plaintiff charging five per cent. for procuring the discount and loaning its credit), and another note, made by the defendants Burr, of the amount of $300, both of which were then held and owned by the plaintiff. That the said note for $2,400, being the note described in the complaint, was thereupon indorsed by the said cashier of the plaintiff, and sent by him to the First National Bank of Albany, to be by it discounted; and said bank received such note and discounted the same at the rate of seven per cent. per annum, for the time it had to run until the maturity thereof, as interest; and deducting such interest, remitted the said residue of the amount of such note to the plaintiff on or about the 16th day of August, 1875. That the plaintiff, on the said 16th day of August, 1875, applied the proceeds of such note so received from the First National Bank of Albany to the payment of said notes of $1,995.45 and $300, by the direction of the defendants Burr, and surrendered such notes to them. That the plaintiff demanded and received from the defendants Burr, out of the residue of the proceeds of such note, as a compensation for procuring the discounting thereof,

and for the loan of its credit by indorsing the same, the sum of $14.67. That neither of said two notes of $1,995.45 and $2,400 was delivered to the plaintiff, or its cashier, as evidence of, security for, or under an agreement for, a loan of money made or to be made by said plaintiff, or its cashier. That on the 12th day of October, 1875, when the said note for $2,400, upon which this action is brought, became due, it was duly presented at the Metropolitan Bank in the city of New York, the place where it was made payable, and payment thereof then and there demanded, which was refused; whereupon said note was duly protested for non-payment, of all of which due notice was given to the defendant, John E. Wells. That on the 4th day of October, 1875, the defendants Burr made their three several promissory notes, all payable four months after date to the order of the defendant, John E. Wells, one bearing date September 15, 1875, for the sum of $2,000; one dated October 4, 1875, for the sum of $2,500; one dated October 9, 1875, for the sum of $2,000, and presented the same to the defendant, John E. Wells, and requested him to indorse the same for their accommodation, and the said John E. Wells thereupon indorsed the same. That such indorsement was made by the said John E. Wells for the purpose, and with the direction given to the defendants Burr, that said notes should be used exclusively to pay and take up the said note for $2,400, upon which this action is brought, and two other notes of $1,000 each, then lying in plaintiff's bank, and one other note of about $2,000, lying at some bank in the city of New York, of all of which the said defendants Burr were the makers and the defendant Wells the indorser. That the defendants Burr, on the said 4th day of October, 1875, negotiated and delivered the first two of said notes to the plaintiff, and the same were discounted by the plaintiff at the request of said Burr, who applied $1,000 of the proceeds thereof to the payment of one of the said $1,000 notes, of which the defendant Wells was indorser, and the balance to the payment of notes and liabilities of theirs other than the said $2,400 and the remaining $1,000 note. That on a subsequent day the defendants Burr delivered to the plaintiff the remaining $2,000 note, as indorsed by defendant Wells, for the purpose of having it discounted, and the plaintiff procured it to be discounted at the

First National Bank of Albany, which remitted the proceeds thereof to the plaintiff, and the plaintiff placed the same to the credit of the defendants Burr, in their account with the plaintiff, on its books, on the 26th day of October, 1875, and the same were subsequently paid by the plaintiff, upon the check of the defendants Burr, drawn on the plaintiff's bank, on the 3d day of November, 1875. That the plaintiff had no notice that the defendant Wells had indorsed the said three notes, or either of them, for any special purpose, or had placed any restriction upon the use to be made of them or either of them. That the interest upon the said $2,400 note, from the time of its maturity to the date of the report, was the sum of two hundred and one dollars and thirteen cents, which, with the sum mentioned in said note, amounted to the sum of two thousand six hundred and one dollars and thirteen cents. That the plaintiff, at the time of the commencement of this action, was and still is the owner and holder of said notes. As conclusions of law he found, that the plaintiff was entitled to recover of the defendants the sum of two thousand six hundred and one dollars and thirteen cents, besides the costs of this action.

*James M. Dudley*, for the appellants.

*Parkhurst & Baker*, for the respondent.

LEARNED, P. J.:

The defense set up by the defendant Wells is, that a short time before the note became due, on which this action is brought, he indorsed certain other notes of the defendants Burr, for the purpose of renewing or taking up the note in suit; that these notes were, in fact, received by the plaintiff with knowledge of the purpose with which Wells indorsed them; and that they should have been applied to the renewing or taking up of the note in suit; and that these new notes have been paid by him. Of course, a material part of this defense is the knowledge on the part of the plaintiff of this purpose.

The learned referee found that the purpose of the defendant Wells was such as is above stated; but he found that the plaintiff had no notice of such purpose, or of any restriction made by

Wells as to the use of these notes.   The defendant Wells, on this appeal, insists that this latter finding is erroneous.

The direct evidence on this point consists of the testimony given by Remus D. Burr, one of the defendants, and of that given by James M. Wood, the cashier of the plaintiff.   Mr. Burr says that when he called at the bank, on the 4th of October, he had with him two of the three new notes — one of $2,000, and one of $2,500; that he stated to the cashier that there were the two notes of $1,000 each, shortly to be due, and the note of $2,400 (now in suit) to be taken care of out of this paper; that Wood said he did not think they had the $2,400 note; that Burr said it had to be taken care of, and Wood said: "All right." The third note, being for $2,000, was subsequently left at the bank by Burr.

It appears, however, that on the same day (the 4th of October) Burr gave a check on the bank, in the firm name, for $4,183.15, which, he says, represented part of the two notes then delivered. This check read: "Pay to notes and interest, or bearer." Burr says he cannot remember for what notes that check was given.

Mr. Wood testifies that Burr made no statement to him as to what disposition Wells wanted to have made of the proceeds of the notes; that Burr told him that he wanted to pay a note of Johnson's, one of Wells' for $1,000, and one of Coulton, Ayers & Co.; that he (Wood) figured up the interest and protest, and that Burr gave the check of $4,183.15 for the amount of these notes. He testifies that Burr did not say he wanted to take up Wells' paper.

The book-keeper of the bank also shows that the check was, in fact, given by Burr, to take up the notes above mentioned.

Thus, it may be seen, that Burr himself does not state that he told Wood of Wells' purpose in indorsing.   He told Wood only what he (Burr) wished to do; that is, that the $2,400 note was to be taken up out of that paper.   And after having first made this statement of his wishes, he then immediately gave a check, by which he applied nearly all of the proceeds of the new notes to take up what is called the Johnson paper.   He was at liberty to change his intention as to the application of the new notes, even assuming his own statement of the transaction to be correct.   We

think, therefore, that the referee was right in holding that the bank had no notice of Wells' purpose. The bank should not be held liable for a misappropriation, without clear evidence of notice to them of the purpose with which Wells indorsed.

In regard to the third new note—that of $2,000—Burr testifies that he left it at the bank the next day with the teller. The teller denies this. It appears to have been discounted some time in October, as the avails were credited to the Burrs on the 28th. On the 3d of November, the Burrs gave a check on the bank for $2,731.62.

There is no evidence for what notes this check was given. The defendant Wells insists that, inasmuch as the Burrs had this amount to their credit in the bank, it was applicable to the note in suit, and must be so applied. But it is not shown that the Burrs owed no other money to the plaintiff. They had the right to apply the money as they chose. The presumption is that they did not apply it to the note in suit, because that note has not been, in fact, taken up. And this check shows that the Burrs did make some application of the money; nor is it certain that this money was the avails of the discounting of the $2,000 note.

The remaining defense is common to all the defendants, and is that of usury. The referee has found, in respect to the notes, that they were not discounted by the plaintiff, but that they were delivered to the plaintiff, to be sent to other banks, and that they were discounted by such other banks at the legal rate of interest; that the plaintiff or the plaintiff's cashier demanded and received of the defendants a certain sum as a compensation for procuring the discounting, and for the loan of credit by indorsing.

An arrangement of this kind might, of course, be a mere cover for the taking of usury. If it were, then, on familiar principles, the notes would be usurious. But the referee finds, on the contrary, that the arrangement was as stated above, and that the notes were not evidence of security for or under an agreement for a loan made or to be made by the plaintiff or its cashier. And we see no reason to question the correctness of his findings in this respect.

If, then, there was no loan in any way by the plaintiff to defendants, for which these notes were evidence or security, the payment

by the defendants of money to the plaintiff for any services, or for no services, did not render the notes usurious.

The defendants urge that the plaintiff had no power to indorse for their accommodation. Even if that be so, still the notes are not usurious, unless the plaintiff made a loan to the defendants. If the indorsements were void, and, therefore, valueless, possibly the defendants may recover what they paid for the indorsements, on the ground of a want of consideration; but the notes remain valid.

The defendants further insist that the plaintiff cannot recover, because it is not the owner of the note in suit. The note is in plaintiff's possession, duly indorsed by the payee. That is sufficient *prima facie.* The defendants insist that the note was discounted by the First National Bank of Albany, and came into the plaintiff's possession only after protest; and that the plaintiff could not purchase this paper. (*First Nat. Bank of Rochester* v. *Pierson,* 16 Alby. L. J., 319.)

The note, however, when it was discounted by the First National Bank of Albany, had the indorsement of the plaintiff, by its cashier. That bank, therefore, taking the note in good faith, could look to the plaintiff as an indorser; and no reason is suggested why the plaintiff would not be liable after due protest.

If the plaintiff had then taken up the note, it could not be said that the plaintiff had purchased the note for speculation, or for "note shaving." That is the kind of transaction condemned in the case last cited.

The case of *West St. Louis Savings Bank* v. *Parmelee* (6 N. Y. W. Dig., 251), cited by defendants, was where a cashier indorsed his individual note, adding his official title, without authority from the bank. It was held that this did not bind the bank. That has no application to the present case, where the act of the cashier was done by the authority of the plaintiff.

And it should further be noticed that the answers of the defendants do not allege any violation of the banking law other than usury. They do not allege any receipt by the plaintiff of a commission for indorsement. On the contrary, they allege a usurious discounting at twelve per cent. This point, therefore, urged by the defendants on the argument, was not within the issues, except as the answer denies plaintiff's title to the note.

The plaintiff's title to the note does not depend on the alleged unlawful transaction. The plaintiff gets title through the First National Bank of Albany, a *bona fide* holder for value; and the plaintiff must be held to be the owner of the note, unless we adopt the principle that, under no circumstances, can a national bank get title to a note, except by discounting it.

The judgment should be affirmed, with costs.

Tappan, J. (dissenting):

I cannot concur in the opinion of the majority of the court in this case.

The plaintiff is a banking association, organized under the act of Congress of the United States, entitled " An act to provide a national currency, secured by pledge of United States stocks, and to provide for the circulation and redemption thereof," approved February 25th, 1863, and June 3d, 1864, and the several acts amendatory thereof, substantially re-enacted in title 62, page 992, Revised Statutes of the United States.

The evidence tended to prove, and the referee expressly found, that when the defendants Burr opened an account with the plaintiff the latter, by its cashier, agreed that the bank would discount for them to the extent of four or five times their average deposits; and if they should require discounts in excess of such amount, he would procure their paper to be discounted for them for a commission of five per cent. per annum for his services. Under such arrangement several notes made by the defendants Burr, and indorsed by the defendant Wells, and afterwards indorsed by James M. Wood as cashier of the plaintiff, were forwarded to other banks, and by such other banks discounted at legal rates, the avails received by plaintiff, and the balance, after deducting five per cent, credited to said defendants Burr.

In reference to the note in suit, the referee made the following special findings:

Seventh. That on or about the 9th day of August, 1875, the defendants Burr made their certain other promissory note, described in the complaint and upon which this action is brought, whereby they promised to pay in two months from the date

thereof, to the order of defendant, John E. Wells, at the Metropolitan National Bank, New York, the sum of twenty-four hundred dollars, which note was indorsed by the defendant, John E. Wells, for the accommodation of the makers.

Eighth. That said note so indorsed was, on or about the 11th day of August, 1875, delivered by the defendants Burr to the plaintiff's cashier, for the purpose of having it discounted, and raising money thereon with which to pay the aforesaid note of $1,995.45, and another note made by the defendants Burr of the amount of $300, both of which were then held and owned by the plaintiff.

Ninth. That said note of $2,400, being the note described in the complaint, was thereupon indorsed by the said cashier of the plaintiff, and sent by him to the First National Bank of Albany, to be by it discounted, and said bank received such note and discounted the same at the rate of seven per centum per annum for the time it had to run until the maturity thereof, as interest, and deducting such interest, remitted the said residue of the amount of such note to the plaintiff on or about the 16th day of August, 1875.     \*     \*     \*     \*     \*     \*     \*     \*

Eleventh. That the plaintiff demanded and received from the defendants Burr out of the residue of the proceeds of such note, as a compensation for procuring the discount thereof, and for the loan of its credit by indorsing the same, the sum of $14.67.

The note of $2,400 was put in evidence as plaintiff's exhibit " A " upon the trial, from which it appears that the indorsement by Wood was as follows :

" Pay A. Van Allen, cashier, or order.

" J. M. WOOD, Cashier."

The referee has found that this note was not delivered to the plaintiff or its cashier as evidence of, security for, or under an agreement for a loan, made or to be made, by plaintiff or its cashier. The note became due on the 12th day of October, 1875. Payment was then demanded at the Metropolitan Bank; and not being made, it was duly protested at that bank, and by it returned to the First National Bank of Albany, and by the latter bank it was returned, with notice of protest, on the 14th or 15th of Octo-

ber, 1875, to the plaintiff, which thereupon took up the note, and brought this action thereon.

Upon the trial the defendants requested the referee to find: "That the plaintiff has no right or power as a corporation or banking association, under the law by which it is created, to sell or loan its credit by indorsement, or becoming surety for the accommodation of others, for a consideration or otherwise."

The referee declined to find upon the question, upon the ground that it was not involved in the decision, and defendants excepted.

The agreement made by Wood with the defendants Burr appears to have been made by him as cashier for plaintiff; the indorsement of the note in suit was by Wood as cashier of plaintiff; and Wood says, in reference to the compensation taken for procuring the discount for the note in suit, and for the loan of its credit by indorsing the same, that he took nothing, that the bank took the $14.67; and the referee, as appears by the eleventh finding above cited, reaches the same conclusion.

By the above exception the defendants raise the question whether the plaintiff, a national banking association, is authorized by law to receive paper, made to be indorsed by such association, to be discounted by another bank, for a compensation to be paid to it therefor. It is well-settled law that corporations created by statute must depend for their powers, and the mode of exercising them, upon the true construction of the statute itself. (*Bank of the U. S.* v. *Dandridge*, 12 Wheat., 68; *Head & Amory* v. *The Providence Insurance Co.*, 2 Cranch, 127.)

By subdivision 7, § 5136, R. S. of U. S., it is provided that these associations, after filing articles of association and an organization certificate, shall have power to exercise, by their board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security, and by obtaining, issuing and circulating notes, according to the provisions of the act.

By section 5197, the rate of interest that these corporations are entitled to receive is prescribed, and by the next section a

penalty for taking usurious interest is provided. (R. S. of U. S., 1011.)

The court of last resort in Maryland has determined that selling railroad bonds upon commission, is not within the corporate powers of a national bank. (*Weckler* v. *First National Bank of Hagerstown*, 42 Md., 581; S. C., 20 Am. R., 95.)

In *First National Bank of Rochester* v. *Pierson*, decided by the Supreme Court of Minnesota, September, 1877 (16 Albany Law Journal, 319), it was held that the purchase of a promissory note by a national bank, for the purpose of speculation, is *ultra vires*, and the bank acquires no title to and cannot recover on a note so purchased.

As was said in *Weckler* v. *National Bank of Hagerstown* (20 Am. R. [opinion], 102), these associations, when organized in their corporate name, are allowed to make contracts, sue and be sued, to elect directors and other officers, " and exercise under this act all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits, by buying and selling exchange, coin and bullion; by loaning money on personal security and by obtaining, using and circulating notes, according to the provisions of this act."

" By it the associations are not simply incorporated as banks, and the scope of their corporate business left wholly to implication; but the kind of banking which they may conduct is limited and defined."

As we read the language of subdivision 7 of section 5,136, it authorizes the association to carry on banking " by discounting and negotiating promissory notes," etc.; and to exercise ' all such incidental powers ' as shall be necessary to conduct *that business*. The mode in which the incidental powers shall be executed, is not defined; but all incidental powers which they can exercise, must be necessary or incidental to the business of banking thus defined.

Under the act in question, the rate of interest allowed to be charged for loan and discounts is defined. The plain intent of Congress by this act, was to secure to the public loans and accom-

modations at reasonable rates of interest, and to protect the shareholders of the banks and the banks against the risk of loss from engaging in enterprises not incidental to the business of banking as defined in the act.

If one of these associations can lawfully make an agreement with a customer to obtain his note to be discounted by another association, at the rate of interest allowed by law, and receive for indorsing and obtaining such discount five per cent per annum additional; can the spirit of the act to protect the public from extortion and usurious rates of interest for accommodation be enforced? If it is lawful for one of these associations to make such an agreement, and receive the fruits of it, would it ordinarily have money to loan to its customers for their accommodation?

If such a transaction is lawful, the temptation that the officers of these associations would be subjected to, would tend to prevent discounting paper in a legitimate way by the bank applied to for such an accommodation, and tend to stimulate reciprocity among these associations in making discounts for each other, to secure a brokerage for procuring the discount and the loan of its credit by indorsing the note sent to the association applied to for discount.

If the First National Bank of Albany discounted the note in suit upon the indorsement of the plaintiff, by its cashier, without knowledge of this agreement, its officers might lawfully presume that plaintiff lawfully acquired the note; and plaintiff would be liable to it upon the indorsement. Would it tend to protect the capital of the bank and the shares of the stockholders to decide, that under this act one of these associations could pledge the credit of the bank, to enable it to obtain a brokerage for loaning its credit by indorsing customers' notes?

I am satisfied that Congress never intended to grant to these associations any such power. I agree with the Supreme Court of Minnesota in its construction of the meaning of the word "negotiate," as used in this statute; that it is used to indicate, not an act of purchase, but one of transfer, whereby the negotiated paper is passed by the owner or holder, and put into circulation. (*First National Bank of Rochester* v. *Pierson*, 16 A. L. J., 319; *Weckler* v. *First National Bank of Hagerstown*, 20 Am. R. [opinion], 102.)

Webster defines "negotiate," to sell; to pass; to transfer for a valuable consideration; as, to negotiate a bill of exchange.

There is no just reason why these associations should not be allowed to sell and transfer notes discounted by them in the ordinary transactions of their legitimate business, and the law intended to allow such sales and transfers, but does not admit of a construction that such language allows such associations to obtain a note by purchase for speculation, nor to engage in the business of indorsing notes to be discounted by other banks for a compensation. The First National Bank of Albany could have recovered upon the note as a *bona fide* holder without knowledge of the unlawful agreement to obtain plaintiff's indorsement. Plaintiff took up the note as indorser with full knowledge of the agreement, and therefore derived no additional rights from the title thus obtained.

For these reasons I am of the opinion that the plaintiff, having no corporate capacity to make the contract by which it obtained the note in suit, never acquired any title to it, or to recover the money paid for it; that said contract and the several acts of the plaintiff under it, were strictly *ultra vires*, and conferred no rights whatever.

The judgment, entered upon the report of the referee, should be reversed, the order of reference vacated, and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and TAPPAN. JJ.

Judgment affirmed, with costs.